Anthony L. VETRANO, Jr., Appellant,

v.

AETNA LIFE & CASUALTY et al, Appellees.

No. A2492.

Court of Civil Appeals of Texas, Houston (14th Dist.).

Feb. 18, 1981.

Anthony L. Vetrano, Jr., Houston, for appellant.

Gregory Neil Jones, Murray Fogler, Fulbright & Jaworski, Houston, for appellees.

Before J. CURTISS BROWN, C. J. and PAUL PRESSLER and JUNELL, JJ.

JUNELL, Justice.

This appeal presents the question whether a motor boat is a "vehicle" under a Texas Homeowners Broad Form Insurance policy which provides that unscheduled personal property is insured against loss by "aircraft and vehicles."

Anthony L. Vetrano Jr., plaintiff in the court below and appellant here, was the insured under a policy issued by Standard Fire Insurance Co., defendant/appellee. Vetrano and two companions went on what was to be a several-day fishing trip to the Chandelier Islands in the Gulf of Mexico with Fred Toft on Toft's twenty-three foot Seacraft boat. On the first afternoon of the trip the boat began taking on water for some undetermined reason. The boat filled with water and capsized. Vetrano lost unscheduled personal property valued at approximately $2700.00. He brought suit against Aetna Life & Casualty Co. and Standard Fire Insurance Co. Aetna was dismissed from the suite on agreement of the parties that Standard Fire Insurance Co. was the Company which had issued the policy.

The case was tried before the court without a jury. At the conclusion of the plaintiff's case, defendant moved for what was called an instructed verdict on two grounds: First, as a matter of law the motorboat was not a vehicle under the policy; and second,

even if the motorboat was a vehicle, as a matter of law the loss of plaintiff's property was not a loss by the vehicle.

The trial court granted the defendant's motion on the first stated ground and rendered judgment denying Vetrano any recovery against Standard Fire Insurance Company. On appeal Vetrano contends that the trial court erred in holding as a matter of law that the motorboat in question was not a vehicle under the insurance policy. We agree with appellant's contention and reverse and remand the case for a new trial.

The subject insurance policy does not insure unscheduled personal property against all risks of physical loss. It insures unscheduled personal property against twelve specific perils, one of which is as follows: "Unscheduled personal property . . . is insured against loss by . . . aircraft and vehicles; . . . ." Nowhere in the policy is the word "vehicles" defined.

In Section II–Liability the policy affords certain coverage of the personal liability of the insured to others for bodily injury and property damage. There are a number of definitions which are expressly applicable only to said Section II of the policy. These include definitions of "motor vehicle" and "recreational motor vehicle," but even in this part of the policy there is no definition of the unqualified word "vehicles." In said Section II the term "motor vehicle" is defined, in part, as a land motor vehicle.

Also in this same Section II of the policy the words "aircraft" and "watercraft" are used although not defined. Appellee argues that the use of these words in connection with certain liability coverages, as well as certain exclusions from such coverages, indicates that if the parties had intended to insure unscheduled personal property against loss by a fishing boat, the policy would have listed as an enumerated peril "loss by watercraft." However, it seems to us that it could be argued just as logically that if the insurance company had intended to insure against loss only by land motor vehicles, the policy would have expressly so limited the coverage and would not have provided coverage of a loss by vehicles without any qualification whatsoever.

■ Since the insurer did not in its policy define the word "vehicles," it is to be construed according to it ordinary import or as the word is generally defined. *Davis v. National Casualty Co.*, 142 Tex. 29, 175 S.W.2d 957 (1943).

91 C.J.S. Vehicle p. 805, under the title "Vehicle" contains some helpful statements of general principles:

"It has been said that the word 'vehicle' is a general term, and as used in common speech it has a varied and somewhat extended meaning. It is considered to be a broader term than 'motor vehicle' or 'automobile,' and, in order to ascertain the meaning of the word in a given instance, resort must be had to the context."

If it should be considered that the word "vehicle" as used is ambiguous, or uncertain in meaning, the policy having been prepared by the insurance company, under a well established rule of law, will be construed most strongly against the insurance company, *Davis v. National Casualty Co., supra,* and cases cited at p. 960; and *MacKnight v. Federal Life Insurance Co.*, 278 Ill.App. 241 (1934).

In *MacKnight* the insurance policy in question provided for the payment of a certain sum in case of death of the insured resulting from "the wrecking or disablement of any vehicle or car. . . ." In that case in connection with the court's holding that a rowboat was a "vehicle" so that the beneficiary of the insured, who, after his boat had been disabled, became lost and so cold and tired that he lay down and froze to death, was entitled to recover on his policy, the court spoke as follows:

"Was the row boat in question a vehicle within the meaning of the policy? Counsel for defendant contends that 'the insured must be riding in a *vehicle* at the time of the accident,' and that the policy includes automobiles or other motor-driven or horse-driven vehicles and not boats _ _ _ that it is intended to insure against

accidents occurring by means of conveyances used on land only, and does not apply to boats... We think the word 'vehicle' applies to any conveyance whether on land or on water or in the air, and that a rowboat is a vehicle within the meaning of the policy. And if it should be considered that the word 'vehicle' as used is ambiguous or uncertain in meaning, the policy having been prepared by the insurance company, under a well established rule of law, will be construed most strongly against the insurance company."

▉ In our opinion the reasoning of the Illinois Appeals Court in *MacKnight* is sound. We have concluded that the unqualified word "vehicles," considering the context in which it was used and considering other portions of the policy in which "vehicles" was used with various qualifications, was, at the very least, ambiguous or uncertain in meaning, and therefore, the trial court was in error in holding as a matter of law that the motor boat was not a "vehicle" under the policy.

We are not unmindful of the dictum in *Employers' Fire Insurance Co. v. Howsley*, 432 S.W.2d 578 (Tex.Civ.App.—Amarillo 1968, no writ), in which then Chief Justice Denton stated that the court did not agree with the contention of the insured under a homeowners policy that a rubber raft was a vehicle but affirmed a judgment for the insured under another provision of the policy which insured unscheduled personal property against loss by windstorm. The court there held that the evidence was conclusive that the rubber raft capsized because of windstorm. The opinion of the Amarillo court contains no discussion of the context in which the word "vehicles" was used, and does not indicate whether the insurance policy there under consideration contained other provisions using and defining the more limited terms "motor vehicles" and "land motor vehicles." For these reasons we respectfully decline to follow the dictum in *Howsley*.

Also, we do not think the decision in *Lloyds v. Burtner*, 436 S.W.2d 611 (Tex.Civ.App.—Ft. Worth 1968, writ ref'd n.r.e.) compels us to reach a different result in the instant case. In *Burtner* the question was whether a motorboat was excluded from coverage under a household goods policy. The policy extended coverage to contents in a garage. The motorboat in question was stored in the garage which was destroyed by fire. The policy expressly excluded coverage of "motor vehicles or aircraft." The trial court held as a matter of law that the motorboat was not a motor vehicle under that policy exclusion and, therefore, was covered by the policy. The trial court rendered judgment for the insured for the value of the boat. The court of civil appeals affirmed.

As was the case with respect to *Howsley*, we do not know whether in *Burtner* the context in which the term "motor vehicles" was used, considering all provisions of the insurance policy in question, indicated whether a motorboat was or was not a motor vehicle under the policy exclusion. Rather, the court in *Burtner*, in affirming the judgment of the trial court, relied on "common knowledge that people ordinarily think of a land vehicle with wheels when speaking of or contracting about a motor vehicle...."

However, making one reference to the context in which the term "motor vehicle" was used in the policy, the court in *Burtner* noted that the insurance company had recognized a distinction between airplanes and motor vehicles by the policy provision excluding coverage for "motor vehicles or aircraft." The court said the insurance company "was not satisfied to depend upon the term 'motor vehicle' to include aircraft, even though land aircraft had wheels and can take off and land with use of such wheels. It is to be presumed that if defendant had intended to except motorboats from coverage, it would have specifically named motorboats as it did aircraft."

We are unable to follow this reasoning. The provision that the policy does not cover "motor vehicles or aircraft" contains no implications whatsoever by the addition of "or aircraft" that "motor vehicles" is thereby

limited to land motor vehicles. Likewise, in the instant case the policy provision covering unscheduled personal property against loss by "aircraft and vehicles" does not necessarily mean that an aircraft is not a vehicle and does not even imply that the unqualified word "vehicles" means only land motor vehicles.

In our opinion the above discussion reinforces our conclusion that the trial court erred in holding as a matter of law that the motorboat in question was not a vehicle under the insurance policy in question.

█ Appellee also contends that even if a fishing boat is a "vehicle" within the insurance policy, the trial court's denial of recovery to the insured was correct because the loss was not caused by the fishing boat itself. We disagree. While there is no evidence in the record as to the actual cause of the boat's taking on water and capsizing, there is absolutely nothing in the record to indicate otherwise than that for some reason the boat sprang a leak, took on more water than the bilge pumps could handle and ultimately capsized. There was evidence that the boat struck a buoy on the way out to sea "with a pretty good lick." However, there was no direct evidence that that caused the leak. There was a suggestion by the insured that the boat owner may have neglected to install the plugs in the boat before dropping the boat in the water at the start of the trip; however, this was no more than speculation as to what might have occurred. The evidence is clear, however, that there were no waves or rough water and there was no suggestion that the water came into the boat other than by a leak in the hull. We believe this evidence certainly would support a finding that the loss of the unscheduled personal property was a loss caused by the boat. Therefore, we overrule appellees' contention that as a matter of law the loss was not caused by the boat itself.

For the reasons set forth above, we reverse and remand the case for a new trial.