## PRUDENTIAL INS. CO. OF GREAT BRITAIN v. ASSOCIATED EMPLOYERS LLOYDS.

No. 15355.

Court of Civil Appeals of Texas.
Fort Worth.

June 20, 1952.

Will C. Thompson, Vernon Coe, and W. S. Barron, Jr., Dallas, for appellant.

Cantey, Hanger, Johnson, Scarborough & Gooch, of Fort Worth, for appellee.

HALL, Chief Justice.

This appeal is between two insurance companies, seeking construction of a loss reinsurance contract between them pertaining to excess of loss on motor vehicles.

The contract was entered into by and between appellant, The Prudential Insurance Company of Great Britain, located in New York, the reinsurer, and appellee, Associated Employers Lloyds, the reinsured, who was plaintiff in the trial court.

A district court of Tarrant County, Texas, without the intervention of a jury, rendered judgment in favor of appellee and against appellant for the sum of $2,338.58, plus interest, etc.

Appellant's appeal is predicated upon four points, directed to error of the trial court: (1) in allowing recovery under the Motor Vehicle Excess of Loss Reinsurance Contract for loss where only a truck with trailer attached was involved, the contract between the parties providing that the reinsurance should apply only to losses involving "two or more motor vehicles"; (2) in rendering judgment against appellant when appellee failed to prove its loss from fire as covered in the contract between the parties; (3) in allowing recovery against appellant when the evidence showed as a matter of law that the entire loss in question was caused by an "upset" of the vehicle involved, such loss being expressly excluded by the contract; and (4) in refusing to dismiss the cause on the ground that the contract sued on expressly provided that any irreconcilable differences between the par-

ties as to the interpretation of such contract should be submitted to arbitration.

██ As a general proposition we find that the term "motor vehicle" ordinarily means a vehicle that is self-propelled, as defined by Article 6675a–1, section (b), Vernon's Tex.Civ.St. In said Article, under section (g), the term "trailer" is defined thus: "'Trailer' means every vehicle designed or used to carry its load wholly on its own structure and to be drawn by a motor vehicle." Under section (a) of said Article, no doubt both a motor vehicle and a trailer are described as a "vehicle."

Under Article 1436–1, section 1, Vernon's Ann. Penal Code, we find the following: "* * * The terms hereinafter set out, as herein defined, shall control in the enforcement and construction of this Act, and it is further provided that wherever the term 'Motor Vehicle' appears in this Act, it shall be construed to include 'House Trailer.'" However, under section 2 and 2a of said Article, the term "motor vehicle" and the term "house trailer" are more specifically described.

Article 6701h, section 1, subd. 3, Vernon's Tex.Civ.St., defines "motor vehicle" thus: "'Motor Vehicle'—Every self-propelled vehicle which is designed for use upon a highway, including trailers and semi-trailers designed for use with such vehicles * *."

In the contract between the parties, under the classification "Motor Vehicle Excess Insurance," paragraph 1 provides in part as follows: "This contract, subject to the limitations hereinafter stated, reinsures the liability (including socalled garage-keeper's legal liability) which the * * * Associated Employers Lloyds of Fort Worth, Texas (hereinafter called the Reinsured) has assumed, or hereafter may assume, upon automobiles and other land motor vehicles of all descriptions, including their equipment and appurtenances * * * wherever located in the United States * * * for which the Reinsured is liable under policies, binders or other contracts issued through the Reinsured's Automobile Department."

Under the exclusions, the contract provides that it will not be responsible for losses derived from "collision" or "upset" etc.

Under a section entitled "Special Conditions," we find the following:

"5. All loss settlements made by the Reinsured, provided they are within the conditions of the Reinsured's original policies and within the terms of this reinsurance, shall be unconditionally binding upon the Reinsurer and the Reinsurer's share shall be payable at the same time and in the same manner as the said Reinsured may elect to pay.

"6. The Reinsured must have paid or become liable to pay on account of any one loss or disaster, a sum in excess of Seven Thousand Five Hundred Dollars ($7,500) (exclusive of reinsurance, if any) before this reinsurance attaches, and in that event the Reinsurer shall only be liable for the excess over Seven Thousand Five Hundred Dollars ($7,500) up to, but in no event exceeding the sum of One Hundred Thousand Dollars ($100,000) by any one loss or disaster.

\* \* \* \* \* \*

"18. It is agreed this reinsurance shall apply only to such losses as involve two or more motor vehicles."

In the contract of insurance which the Associated Employers Lloyds sold to one Earl Gibbon, doing business as Earl Gibbon Petroleum Transport, Shreveport, Louisiana, we find among other provisions the following: "When two or more automobiles are insured hereunder, the terms of this policy shall apply separately to each but a motor vehicle and a trailer or trailers attached thereto shall be held to be one automobile as respects limits of liability under coverages A and B and separate automobiles as respects limits of liability, including any deductible provisions, under coverages * * C * * * ." Coverage C of said policy includes loss by fire.

The loss in this case involved a 1947 White truck and a 1946 Freuhauf Tandem semi-trailer, which was attached to said truck. The loss resulted from the burning of the truck and trailer after the same had overturned while being driven upon the

highway. No other vehicle of any kind was involved in the accident.

Appellant's theory of the case is that under the language used in Special Conditions, supra, appellee is barred from any right of recovery because there were not two or more motor vehicles involved. Its contention is that a truck and a trailer attached thereto cannot be classified as two "motor vehicles."

Appellee settled with Gibbon, and the correctness of the amount of the excess which appellee paid Gibbon is not questioned here.

We find our problem is to answer, in the main, the following question: Can a trailer be counted as a motor vehicle so that it and the truck may be called two motor vehicles?

Under the terms of the contract between the parties, we find that a "motor vehicle" is a common term, recognized to be a self-propelled vehicle, in other words, a vehicle which is pulled or pushed by a motor within or on itself. There is no doubt but that the above statutes indicate, in some instances, that a trailer pulled by a motor vehicle may become a part of said motor vehicle, but none of the statutes provide that a trailer is a motor vehicle. A trailer has been defined by some of the courts as follows: "It is only so much freight, even though it does run on its own wheels." Fuller v. Palazzolo, 329 Pa. 93, 197 A. 225, 231. Where a person lends a trailer or semi-trailer to an owner of a truck and while the same is being so operated on the public highway and connected with said truck, it has been held that the owner of the trailer is not responsible in damages to a third party, because the same is not considered a "motor vehicle." See Hennessy v. Walker, 279 N.Y. 94, 17 N.E.2d 782, 119 A.L.R. 1029; Blashfield, Cyclopedia of Automobile Law and Practice, Vol. 1, Part 1, Sec. 2; Liberty Highway Co. v. Callahan, 24 Ohio App. 374, 157 N.E. 708. See also State v. Harper, 353 Mo. 821, 184 S.W.2d 601.

Words used in the contract will be construed in the light of their ordinary and commonly accepted meaning. 10 Tex.Jur., p. 301, sec. 172. It may be conceded, for the purpose of argument, that the policy of insurance issued by appellee intended to consider the words "motor vehicle" and the word "trailer" as synonymous; still such meaning should not be construed to be included in the provisions of the reinsurance contract between the parties here, because the same is in violation of its exception 18. There is no testimony indicating that appellant impliedly or otherwise adopted the meaning of the words "motor vehicle" to include "trailers." Neither has it waived its rights to enforce its contract under section 18, supra.

The contract between the parties does provide that appellee is permitted to write any policy it sees fit and the appellant would pay for all losses in excess of $7,500 and no more than $100,000 paid, without question, unless the loss comes within some of its specific exceptions. We think exception 18 is cast in plain and unambiguous language.

"Reinsurance" is defined in 8 Couch, Cyclopedia of Insurance Law, p. 7389, as "a contract whereby one for a consideration agrees to indemnify another, either in whole or in part, against loss or liability the risk of which the latter has assumed under a separate and distinct contract as insurer of a third party."

The contract between the parties indicates that it is one of "Motor Vehicle Excess of Loss Reinsurance," containing a catastrophe form of coverage, and the liability of the reinsurer, appellant herein, is limited to all exclusions and special conditions set out therein. We cannot, therefore, find in any of its terms where a truck and a trailer constitute two distinct motor vehicles. Exception 18 provides that it was not to pay for damages done to one motor vehicle which may be pulling a trailer while on the highway, but that it is to take care of losses where a calamity has happened when two or more motor vehicles are involved.

For reasons stated, the case is reversed and rendered for appellant and that appellee take nothing by its suit.