**Glenn Robert WILLIAMS, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–84–247–CR.**

Court of Appeals of Texas,
Fort Worth.

Oct. 30, 1985.

Rehearing Denied Dec. 4, 1985.

Randall Grubbs, Garland, for appellant.

Jerry Cobb, Crim. Dist. Atty., and Jim E. Crouch, Asst., Denton, for the State.

OPINION

HOPKINS, Justice.

Upon a plea of not guilty, the jury found the defendant guilty of the offense of involuntary manslaughter in the operation of a "motorboat" while intoxicated. The jury recommended that defendant's punishment of ten years confinement in the Texas Department of Corrections be probated for a period of ten years and that he pay a fine of $5,000. The trial court entered judg-

ment in accordance with the jury's verdict and included in the terms and conditions of probation that defendant pay restitution in the amount of $5,583.90 in monthly installments of $50 each.

In his first four grounds of error, defendant contends that the indictment is fundamentally defective. In his last two grounds he asserts the trial court erred in requiring payment of restitution as a condition of probation.

We reverse the judgment of the trial court.

The defendant, in operating a motorboat while intoxicated, collided with a capsized sailboat. David Gagnier was underneath trying to help his companions upright the sailboat at the time of the collision that tragically resulted in Gagnier's death. The breath alcohol test administered to the defendant had a reading of 0.14 percent alcohol concentration.

The testimony revealed that the skier being towed behind defendant's boat, one of the occupants of the boat and one of Gagnier's companions all tried to warn the defendant of the apparent impending collision. There was also testimony that defendant could have avoided the collision if he had turned the boat when the skier first saw the sailboat. However, the defendant was not looking where he was headed at the time but was watching the skier.

The pertinent portion of the indictment charged the defendant as follows:

did then and there intentionally and knowingly operate a *motorboat* while intoxicated, and did by reason of such intoxication cause the death of an individual, David Allen Gagnier through accident and mistake, namely: by driving said *motorboat* into David Allen Gagnier; ... [Emphasis added.]

TEX.PENAL CODE ANN. sec. 19.05 (Vernon 1974) reads in pertinent part:

Involuntary Manslaughter

(a) A person commits an offense if he:

(1) recklessly causes the death of an individual; or

(2) by accident or mistake when operating a *motor vehicle* while intoxicated and, by reason of such intoxication, causes the death of an individual. [Emphasis added.]

Instead of charging the defendant with recklessly causing the death of an individual under 19.05(a)(1), the State elected to charge the defendant with the violation of 19.05(a)(2), substituting "motorboat" for the statutory "motor vehicle." Defendant argues that no offense was alleged by the indictment in that "motorboat" and "motor vehicle" are not synonymous nor interchangeable; of course, the State asserts a contrary view. We agree with the defendant for the reasons stated herein.

The term "motor vehicle" is not defined in TEX.PENAL CODE ANN. sec. 19.05, nor is there any general definition of that term anywhere in the Texas Penal Code. However, TEX.PENAL CODE ANN. sec. 1.05 (Vernon 1974) provides:

Construction of Code

(a) The rule that a penal statute is to be strictly construed does not apply to this code. The provisions of this code shall be construed according to the fair import of their terms, to promote justice and effect the objectives of the code.

(b) Unless a different construction is required by the context, Sections 2.01, 2.02, 2.04, 2.05, and 3.01 through 3.12 of the Code Construction Act (Article 5429b–2, Vernon's Texas Civil Statutes) apply to the construction of this code.

TEX.REV.CIV.STAT.ANN. art. 5429b–2, sec. 2.01 (Vernon Supp.1985) provides:

Words and phrases shall be read in context and construed according to the rules of grammar and *common usage.* Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly. [Emphasis added.]

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1981) defines in applicable part the following terms:

Motor Vehicle: "an automotive vehicle not operated on rails; *esp:* one with rubber tires for use on highways ..."

Motorboat: "a boat or small ship propelled by an internal-combustion engine or an electric motor ..."

Boat: "a small vessel with or without a deck propelled by oars or paddles or by sail or power ..."

Vessel: "a usu. hollow structure used on or in the water for purposes of navigation: a craft for navigation of the water; *esp:* a watercraft or structure with its equipment whether self-propelled or not that is used or capable of being used as a means of transportation in navigation or commerce on water and that usu. excludes small rowboats and sailboats ..."

It would seem apparent from these definitions that the common usage of the term "motor vehicle" relates to a conveyance used on land and the term "motorboat" relates to a conveyance used on or in the water. By substituting the term "motorboat" for the statutory "motor vehicle," a logical assumption is that the State recognized the potential hazard of alleging one mode of transportation and proving another, *i.e.* a fatal variance between allegation and proof.

This court has previously held that a motorboat is not a motor vehicle. *Lloyds v. Burtner*, 436 S.W.2d 611 (Tex.Civ.App.—Fort Worth 1968, writ ref'd n.r.e.):

It is a matter of common knowledge that people ordinarily think of a land vehicle with wheels when speaking of or contracting about a motor vehicle, and, in the absence of statutory definition, or plain and clear language in the contract, business people so regard the term when using the term 'motor vehicle.'

*People seldom, if ever, refer to* motor driven ice sleds, *motor powered pleasure boats and life boats,* motor powered

airplanes and seaplanes *as motor vehicles.* [Emphasis added.]

*Id.* at 613–14.

Other cases which have held the term "motor vehicle" to be synonymous with land travel and more particularly travel upon roadways are: *National County Mut. Fire Ins. Co. v. Wallace*, 673 S.W.2d 410 (Tex.App.—Houston [1st Dist.] 1984, no writ); *Equitable General Ins. Co. v. Williams*, 620 S.W.2d 608 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.); *Nicholson v. First Preferred Ins. Co.*, 618 S.W.2d 560 (Tex.Civ.App.—Amarillo 1981, no writ); *Brookshire v. Houston Independent School Dist.*, 508 S.W.2d 675 (Tex.Civ.App.—Houston [14th Dist.] 1974, no writ); *International Ins. Co. in N.Y. v. Hensley Steel Co., Inc.*, 497 S.W.2d 64 (Tex.Civ.App.—Waco 1973, no writ); *Prudential Ins. Co. v. Associated Employers Lloyds*, 250 S.W.2d 477 (Tex.Civ.App.—Fort Worth 1952, no writ).

In at least thirteen statutes the Texas Legislature has recognized and provided for a definition of "motor vehicle" which acknowledges the intended use upon land, more specifically roads or highways. TEX. REV.CIV.STAT.ANN. art. 911g, sec. 1(d) (Vernon Supp.1985), art. 4413(36), sec. 1.03(1)(A) (Vernon Supp.1985), art. 5069–7.-01(a) (Vernon Supp.1985), art. 6675a–1(b), art. 6675a–6e, sec. 1, art. 6687b, sec. 1(b) (Vernon 1977), art. 6701d–11, sec. 1(2), art. 6701h, sec. 1(3) (Vernon Supp.1985); TEX. NAT.RES.CODE ANN. sec. 116.001(5) (Vernon Supp.1985); TEX.TAX CODE ANN. sec. 151.801(d), sec. 153.001(18) (Vernon 1982), sec. 152.001(3)(A) (Vernon Supp. 1985); and TEX.WATER CODE ANN. sec. 50.058(a) (Vernon Supp.1985). In the one instance noted in the State's brief where the term is defined to include other forms of vehicles or conveyances, the legislature was specific in providing that for purposes of certain sections of the act "motor vehicle" included "motorboat." TEX.REV. CIV.STAT.ANN. art. 4477–9a, sec. 5.01(7) (Vernon Supp.1985).[1] No such specific in-

---

1. Article V of the Texas Litter Abatement Act deals with abandoned motor vehicles and sec. 5.01(7) defines motor vehicle as meaning "a

motor vehicle subject to registration under the Certificate of Title Act (Article 6687–1, Vernon's Texas Civil Statutes), except that for purposes of

tent was indicated in art. 19.05 or any other provisions of the Texas Penal Code.

TEX.PARKS & WILD.CODE ANN. sec. 31.003(2) (Vernon 1976) and sec. 31.003(3) (Vernon Supp.1985) contains the following definitions:

"Vessel" means any watercraft, other than a seaplane on water, used or capable of being used for transportation on water.

"Motorboat" means any vessel propelled or designed to be propelled by machinery, whether or not machinery is permanently or temporarily affixed or is the principal source of propulsion.

From these definitions it seems clear that the legislature had in mind different types of conveyances or vehicles when it speaks of "motor vehicles" and "motorboats," one for use on the land and the other for use on or in the water.

█ The State cites as support for its contention that the terms "motorboat" and "motor vehicle" are synonymous and interchangeable, the case of *McLemore v. State*, 669 S.W.2d 856 (Tex.App.—Austin 1984, no pet.). However, a careful reading of that case reveals that the court was not confronted with nor did it consider the term "motor vehicle." The statute under consideration was TEX.PENAL CODE ANN. sec. 31.07(a) (Vernon 1974) which provided:

A person commits an offense if he intentionally or knowingly operates another's boat, airplane, or motor-propelled vehicle without the effective consent of the owner.

The defendant in the *McLemore* case contended that since the statute specifically listed "airplane" in addition to "motor-propelled vehicle" that an indictment that charges operation of a motor-propelled vehicle is in fatal variance with evidentiary proof of operation of an airplane. We acknowledge the ruling of the court in *McLemore* that the term motor-propelled vehicle is certainly broad enough to include a motor-propelled airplane, and would be broad

Section 5.02, 5.03, and 5.04 of this Act, 'motor vehicle' includes a motorboat, outboard motor,

enough to encompass a motor-propelled boat. But we see a distinction between the term "motor-propelled vehicle" and "motor vehicle." The addition of "propelled" certainly broadens the generally accepted and recognized definition of "motor vehicle."

█ It is not a proper function of the judiciary to legislate by ascribing to words or phrases a distorted meaning or definition that is substantially at variance with that ascribed by the legislature or by citizens of average intelligence and common sense.

█ Enactments of the Texas Legislature, decisions by the courts of this State, dictionary definitions and common understanding and usage all dictate that the term "motor vehicle" is associated with land travel and the term "motorboat" is associated with travel on or in the water. By the State electing to proceed as it did, it failed to allege an offense against the laws of this State. Defendant's ground of error one is sustained.

In view of our holding and the fact we were not furnished with a record of the sentencing hearing as it relates to the determination of the amount of restitution by the trial court, we do not consider the defendant's remaining grounds of error.

The judgment is reversed, and the case is remanded to the trial court for entry of a judgment dismissing the indictment.

JORDAN, J., dissents.

JORDAN, Justice, dissenting.

I respectfully dissent.

I would affirm the conviction because legislative intent, rules of statutory construction, logic, and common sense compel a finding that a "motorboat" is also a "motor vehicle".

In TEX.PENAL CODE ANN. sec. 1.05(a) (Vernon 1974) the Legislature tells us that the provisions of the Penal Code are to be construed to promote justice and effect the Code's objectives. Thus, the Penal Code is not to be construed so strictly as to thwart

or vessel subject to registration under Chapter 31, Texas Parks and Wildlife Code."

or prevent justice or to destroy the objectives of our penal laws. I cannot agree with the majority opinion in its holding that a drunk who kills while driving an automobile may be punished upon showing of "accident" alone, but that the drunk who kills while driving a motorboat must be shown to have acted "recklessly." Such surely was not the intention of the Legislature.

In support of its holding the majority cites at least thirteen civil statutes wherein the definition of the term "motor vehicle" specifies that it is a conveyance intended to be used on land, more particularly roads or highways. In addition, the majority also relies on several civil cases. However, I am not persuaded by the majority's reliance on these statutes and cases for two reasons. First, it is obvious that in each instance where the term "motor vehicle" is statutorily defined, the definition is specifically limited and confined to that chapter, act, article or section. The definition of a word found in one act does not necessarily determine the meaning of the same word in another act pertaining to a different subject. *Brookshire v. Houston Independent School Dist.*, 508 S.W.2d 675, 678 (Tex.Civ. App.—Houston [14th Dist.] 1974, no writ); *Gulf, C. & S.F. Ry. Co. v. Woods*, 262 S.W. 229, 231–32 (Tex.Civ.App.—Austin 1924, no writ). Second, all of the statutes and cases cited by the majority containing a definition of the term "motor vehicle" are civil in nature and this is a criminal prosecution.

In contrast to the majority's reliance on civil law, I note the term "vehicle" is defined in two different sections of the Texas Penal Code. *See* TEX.PENAL CODE ANN. secs. 28.01(4) (Vernon Supp.1985), and 30.01(3) (Vernon 1974). The term, as defined in those sections, means:

"Vehicle" includes any device in, on, or by which any person or property is or may be propelled, moved, or drawn in the normal course of commerce or transportation.

Under this definition it is rather obvious that the term "motor vehicle" should and would include the term "motorboat."

Moreover, according to the 1984 WEBSTER'S II NEW RIVERSIDE UNIVERSI-TY DICTIONARY a vehicle *"is a device, as a motor vehicle or a piece of mechanized equipment, for transporting passengers, goods, or apparatus: a conveyance."* (Emphasis added.) Under that definition, a "motorboat" is, without question, a "motor vehicle."

Finally, I find the majority's reading of *McLemore v. State*, 669 S.W.2d 856 (Tex. App.—Austin 1984, no pet.) to be too narrow. While it is true the *McLemore* court was defining the term "motor-propelled vehicle," and not the term "motor vehicle", the reasoning in that case is applicable here. The court in *McLemore* stated:

Implicit in appellant's contention that there is a fatal variance between the indictment and the proof is the proposition that "boat, airplane, or motor-propelled vehicle" are mutually exclusive terms. While this may be true in some instances, it is not true in all instances. Moreover, we do not believe it was the intent of the legislature to classify motor-powered boats and airplanes as vehicles separate and distinct from "motor-propelled vehicles."

\*    \*    \*    \*    \*    \*

Even if "boat" and "airplane" did not appear in sec. 31.07(a), *supra*, proof the accused operated a motorboat or motor-powered aircraft would nevertheless support a conviction for unauthorized use of a "motor-propelled vehicle." To this extent, the phrase "boat, airplane or motor-propelled vehicle" is redundant. The inclusion of "boat" and "airplane" in sec. 31.07 has been explained as the expression of a legislative intent to include within the scope of the statute boats and aircraft that are not motor-propelled. Searcy and Patterson, Practice Commentary, 3 Tex.Pen.Code Ann. 558 (1974). Thus, proof the accused operated an airplane constitutes a fatal variance from the allegation he operated a "motor-propelled vehicle" only if the airplane was motorless.

*Id.* at 858.

Following the same logic, I do not believe it was the intent of the Legislature in writ-

ing TEX.PENAL CODE ANN. sec. 19.-05(a)(2) (Vernon 1974) to not include motorboats within the definition of the term "motor vehicle."

For the reasons stated I think the indictment in this case sufficiently charged an offense and I would affirm the conviction.

FENDER, C.J., joins.