**Opinion issued October 9, 2025**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-24-00835-CR

———————————

**PAUL-DAVID HALEY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 415th District Court**
**Parker County, Texas[1]**
**Trial Court Case No. CR24-0284**

---

[1] The Texas Supreme Court transferred this appeal from the Court of Appeals for the Second District of Texas. *See* TEX. GOV'T CODE § 73.001 (authorizing transfer of cases between courts of appeals). Under the Texas Rules of Appellate Procedure, we apply the transferor court's caselaw in the event of conflict. *See* TEX. R. APP. P. 41.3. The parties have not cited, nor has our research revealed, a conflict between the precedent of the Second Court of Appeals and of this Court on any relevant issue.

**O P I N I O N**

The question before us is whether sufficient evidence supported the jury's finding that Paul-David Haley operated a "motor-propelled vehicle" under section 31.07 of the Texas Penal Code. Haley argues there was insufficient evidence that the truck at issue (which he was operating at the time he was pulled over) qualified as a motor-propelled vehicle because no one expressly testified that it was and because the truck was in poor shape and hotwired[2] (although it was an ordinary, mobile truck). Applying the plain terms of the statute and considering this record, we disagree and affirm.

## BACKGROUND

This case began with Haley being pulled over by police for a defective headlight. He was driving a black 2001 Ford F-250 truck, which he claimed belonged to his friend.

Sheriff Deputy G. Spann noticed that the truck was in poor condition. It was missing the ignition, ignition switch, and panels. It had a damaged fuse box, wires

---

[2]    The tell-tale sign for hotwiring is an "ignition [without] a key in it and a bundle of wires [] sticking out." *Dumont v. State*, No. 07-17-00454-CR, 2019 WL 922675, at *1 (Tex. App.—Amarillo Feb. 25, 2019, no pet.) (mem. op., not designated for publication); *see also Martinez v. State*, No. C14-90-00849-CR, 1991 WL 127371, at *1 (Tex. App.—Houston [14th Dist.] July 11, 1991, no pet.) (not designated for publication) ("[B]reaking the steering column and hotwiring the ignition [is] a common method for stealing cars.").

hanging from the dashboard, torn upholstery, and broken windows. And Haley had no keys to the truck.

Deputy Spann determined the truck was stolen. He arrested Haley, who was charged with Unauthorized Use of a Vehicle.[3]

At trial, Deputy Spann testified that due to the lack of keys and condition of the truck, he surmised that Haley operated the truck by hot-wiring or "cross[ing] wires under the dash." Spann described how the ignition had likely been bypassed through exposed wires.

Multiple witnesses—including Deputy Spann and the owner of the truck, Kyle Wilson—testified to the truck being driven on a public roadway. Wilson also testified that he was able to drive his truck home from the tow yard after he recovered it.

Haley testified in his defense. He admitted to operating the vehicle and acknowledged it was a motor vehicle. Haley also admitted that he did not have permission from Wilson—the truck's owner—to drive the vehicle.[4]

The jury convicted Haley and sentenced him to nine years in prison. Haley appealed.

---

[3]     TEX. PENAL CODE § 31.07.

[4]     During trial, Haley testified that he did not know the truck was stolen and that he believed his friend—who allegedly lent him the truck—was the true owner of the vehicle. Haley does not argue this position on appeal.

3

## DISCUSSION

The question before us is whether sufficient evidence supports the finding that the vehicle Haley operated was a "motor-propelled vehicle" under section 31.07 of the Texas Penal Code. The answer is yes.

### A. Standard of Review

In analyzing legal sufficiency, we look to the standard laid out in *Jackson v. Virginia*, 443 U.S. 307 (1979). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (quoting *Jackson*, 443 U.S. at 319 (emphasis in original)).

It is the factfinder's duty "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* (quoting *Jackson*, 443 U.S. at 319). We give deference to the factfinder; therefore we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007)).

"It is not necessary that the evidence directly proves the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing the guilt of

4

the actor, and circumstantial evidence alone may be sufficient to establish guilt."

*Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013). We give "almost complete deference to a [factfinder's] decision when that decision is based upon an evaluation of credibility." *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008).

**B.      A rational trier of fact could have found beyond a reasonable doubt that Haley was operating a "motor-propelled vehicle."**

**1.      Under its plain meaning, a motor-propelled vehicle is a vehicle that is propelled by (*i.e.*, moves forward by) a motor.**

A person commits the offense of unauthorized use of a vehicle "if he intentionally or knowingly operates another's boat, airplane, or *motor-propelled vehicle* without the effective consent of the owner." TEX. PENAL CODE § 31.07(a) (emphasis added).

When interpreting statutes, the text is paramount. Here, the Texas Penal Code does not define the term "motor-propelled vehicle." *See id.* § 1.07. We thus apply the term's plain meaning. *See id.* § 1.05; TEX. GOV'T CODE § 311.011; *see, e.g.*, *Denton v. State*, 911 S.W.2d 388, 389–90 (Tex. Crim. App. 1995) (interpreting "operate" under TEX. PENAL CODE § 31.07 and concluding that defendant operated the stolen truck within the meaning of the statute by starting the ignition and revving the accelerator).

We begin with the term "vehicle." A vehicle is "any device or contrivance for carrying or conveying persons or objects, including land conveyances, vessels, aircraft, and spacecraft." *McLemore v. State*, 669 S.W.2d 856, 858 (Tex. App.—Austin 1984, no pet.) (quoting dictionary definition); *see also Vehicle*, WEBSTER'S THIRD NEW INT'L DICTIONARY (1976 ed.) (defining "vehicle" in part as "a means of carrying or transporting something," or "a carrier of goods or passengers").[5] Haley does not dispute that he was operating a vehicle—even a "motor" vehicle.

The dispute here instead focuses on the term "motor-propelled." Consistent with the plain text, Texas caselaw has explained that a "motor-propelled vehicle" is "any device or contrivance for carrying or conveying persons or objects that is motor-propelled, including motor-propelled boats and aircraft." *McLemore*, 669 S.W.2d at 858. That is, a motor-propelled vehicle is one that is ordinarily "propelled" by a "motor."

"Motor" means "any of various power units that develop energy or impart motion": such as "a small compact engine" or "internal combustion engine." *Motor*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2020); *see also Motor*, WEBSTER'S THIRD NEW INT'L DICTIONARY (1976 ed.) (defining "motor" in part as

---

[5] The term "motor-propelled vehicle" has been included in the statute since its enactment in 1973. *See* Act of May 24, 1973, 63rd Leg., R.S., ch. 399, § 1, sec. 31.07, 1973 Tex. Gen. Laws 883, 932 (codified at TEX. PENAL CODE § 31.07).

"one that imparts motion: a source of mechanical power"; "a small compact engine," "a gasoline engine," or an "internal combustion engine").

And "propelled" means "to drive forward or onward by or as if by means of a force that imparts motion." *Propelled*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2020); *see also Propelled*, WEBSTER'S THIRD NEW INT'L DICTIONARY (1976 ed.) (similar).

Thus, a motor-propelled vehicle is a vehicle that is propelled by (*i.e.*, moves forward by) a motor (*i.e.*, engine or other power unit).

### 2. Applying this plain language, the record supports the jury's finding.

On this record, and viewing the evidence in the light most favorable to the verdict, a rational juror could have found beyond a reasonable doubt that Haley was operating a motor-propelled vehicle—a vehicle that, in ordinary functioning, moves by a motor propelling it. *See Clayton*, 235 S.W.3d at 778 (we determine whether necessary inferences are reasonable based on the evidence, viewed in a light most favorable to the verdict).

Witnesses (Deputy Spann, Wilson, and Haley himself) testified about the 2001 Ford F-250 truck and that it was demonstrably mobile when Haley was pulled over—it was moving (*i.e.*, propelled forward) on the roadway. Indeed, Haley was pulled over by police while driving the truck on a major highway. Haley testified that he drove the truck, that the truck "looked normal," and that his friend "started"

7

the truck for him. Deputy Spann told the jury that Haley drove past him in the truck and then pulled over when Spann initiated the traffic stop. Additionally, Wilson (the owner of the vehicle) testified that when he recovered the truck at the tow yard, he was able to start the truck and drive it away. And Haley himself admits that the truck was a *motor* vehicle—a vehicle with a motor.

Additionally, the jury received evidence of a body camera photograph from an officer, and that photo depicted an ordinary truck. The jury also saw a video of the truck that Wilson (the owner) recorded when he retrieved it from the tow yard, and that video evidenced (subject to the conditions described above) the cabin, body, bed, and tires of an ordinary truck.

The jury, as the sole judge of the facts and credibility of the witnesses, was free to believe and weigh the testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). The jury was also free to draw reasonable inferences from the evidence. *See Hooper*, 214 S.W.3d at 15 ("[W]e permit juries to draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial.").

On this record, the jury could have reasonably found that Haley was operating a motor-propelled vehicle at the time he was pulled over. *See* TEX. PENAL CODE § 31.07. The evidence supports a reasonable inference that the truck at issue was a "motor-propelled vehicle." *See Hooper*, 214 S.W.3d at 15–16.

8

That the truck was hotwired (or in poor condition) at the time does not change this conclusion. A rational juror could have found that the truck remained a "motor-propelled vehicle" when it was temporarily operating abnormally through hotwiring. Indeed, the jury could have found that the truck was still being propelled by a motor—or that its nature remained a motor-propelled vehicle.

To hold otherwise would depart from the plain terms of the statute. Those terms do not require a vehicle that was not hotwired or that was in any particular condition. They do not even require a vehicle that is currently or always being propelled by a motor. They instead require a vehicle that is, by its nature, motor-propelled. *See Denton*, 911 S.W.2d at 390 ("[W]ords not specifically defined by the Legislature are to be understood as ordinary usage allows . . . .").

Our sister court addressed a similar situation in *McLemore* and reached the same conclusion. There, the Third Court of Appeals determined that the evidence indicating the defendant operated a "motor-powered aircraft" was sufficient to uphold the defendant's conviction for the unauthorized use of a "motor-propelled vehicle" under the same statute. *McLemore*, 669 S.W.2d at 857–59 (interpreting TEX. PENAL CODE § 31.07). The court explained that the evidence of the defendant flying, taxiing, and parking the airplane supported an inference that the airplane was, in fact, motor-propelled. *See id.* at 857–58 (noting that a motorless airplane, like a

9

glider, or a motorless boat would not fall under the definition of a "motor-propelled vehicle" but is still included in the statute). So too here.

Viewing the evidence in the light most favorable to the jury's verdict, a rational juror could have found beyond a reasonable doubt that Haley operated a motor-propelled vehicle. *See* TEX. PENAL CODE § 31.07(a); *Hooper*, 214 S.W.3d at 13. We thus hold that the evidence is legally sufficient to support Haley's conviction for Unauthorized Use of a Vehicle.

## CONCLUSION

We affirm the trial court's judgment.

Jennifer Caughey
Justice

Panel consists of Justices Rivas-Molloy, Gunn, and Caughey.

Publish. TEX. R. APP. P. 47.2(b).